(No. 17852.—Decree affirmed.)
MAXIMILLIAN MUTTER, Appellee, *vs.* JOSEPH A. METZGER *et al.* Appellants.

*Opinion filed February 16, 1927.*

1. SPECIFIC PERFORMANCE—*when contract for conveyance has sufficient consideration.* A contract for a conveyance which stipulates that the purchaser must pay a certain price in full on or before a certain day has a sufficient consideration, and it cannot be contended that because, as alleged, the contract was executed as additional security for a loan and the loan was paid off there was no consideration for the contract.

2. SAME—*proof that contract for conveyance was intended as a mortgage must be clear and convincing.* Evidence to show that a written instrument in the form of a deed or a contract for a conveyance was in fact intended as a mortgage or was security for the payment of money must be clear and convincing, as it is an attempt to control by parol evidence the course of a legal title contrary to the meaning of a written instrument.

APPEAL from the Circuit Court of LaSalle county; the Hon. EDGAR ELDREDGE, Judge, presiding.

LEE O'NEIL BROWNE, and WOODWARD, HIBBS & POOL, for appellants.

GLEIM & COLWELL, and BUTTERS & BUTTERS, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The circuit court of LaSalle county entered a decree against Joseph A. Metzger and Frances H. Metzger, his wife, for the specific performance of a written contract to convey the east half of the west half of lot 2, block 17, in the original town of Ottawa, to Maximillian Mutter for $8900, and the defendants have appealed.

The contract was dated February 15, 1922, and by it Metzger and his wife agreed to convey to Mutter, upon payment of the consideration, the premises in question, and Mutter agreed to pay $8900 between the date of the contract and February 15, 1924. The facts which were relied upon as a defense were set up in the defendants' answer, as follows: The defendants at the time of signing the contract were indebted to Fred Gebhardt in the sum of $5700, secured by a mortgage on the property in question. Gebhardt was insistent upon the payment of this indebtedness, or at least a part of it, and the defendants applied to the complainant for a loan of $2700. The complainant made the loan, payable in two years, upon the security of a mortgage on the premises, but insisted, because the mortgage was a second mortgage, upon having additional security, and demanded that defendants execute the contract in question for the conveyance of the premises as additional security. It was agreed between the complainant and the defendants that if the $2700 mortgage debt was paid the complainant would cancel the contract for the sale of the premises, but that if the defendants were unable to pay it the complainant would pay the defendants $8900 after deducting the amount due on the mortgage and such further payment as might be due on any other mortgage on

the premises, and in consideration thereof the defendants would convey the premises to the complainant. The defendants paid the mortgage to the complainant, but notwithstanding his agreement he refused to cancel the contract of sale and insisted that under its terms he was entitled to a deed. The answer avers that there was no other consideration for the execution of the agreement by the defendants, and that therefore the agreement is without consideration and they are not bound to perform it.

The facts which appear from the evidence are, that the premises in question were formerly owned by William Gebhardt, who conveyed them on November 29, 1921, to Joseph A. Metzger and Sherman G. Cole for $8700, and on December 3, 1921, Cole and Metzger conveyed them by a trust deed to Henry Stocker to secure the payment of a note for $5700, due in five years from that date. On February 15, 1922, the contract for the conveyance of the property to Mutter for $8900 was executed, and Mutter at the same time executed an agreement that in the event of his becoming the owner of the premises before February 15, 1924, he would execute a lease of them to Metzger for a term commencing with the date of the delivery of the deed for the premises to him and terminating on February 15, 1924, at a rental of $75 a month. On February 16, 1922, Mutter made the loan of $2700 to Metzger, and Metzger executed a trust deed to secure its payment in two years. The $5700 trust deed to secure the indebtedness to Gebhardt was released and a new trust deed executed to secure Metzger's note of $3000. On February 2, 1924, Mutter tendered to Metzger $8900 in accordance with the contract and demanded a conveyance of the property, which Metzger refused.

The appellants contend that the intention of the parties was that the contract was given as an additional security for the loan of $2700, that the transaction began as a negotiation for a loan and was concluded by the making

of the loan and that no additional consideration was given for the contract of sale; that Metzger expended $200 or $300 on improvements on the premises and the loan was re-paid. Mutter did make a loan of $2700 to Metzger, which was evidenced by a promissory note and interest notes and secured by a trust deed, all in the ordinary manner in which the making of mortgage loans is conducted, and the notes have been paid and the trust deed released. The contract for the conveyance of the premises was a plain contract of sale in the ordinary form, and there is nothing on its face to indicate that it was anything else.

It is argued that there was no other consideration for the contract of sale but the loan of $2700. This is in contradiction of the terms of the contract, which on its face shows that Mutter agreed to pay the full amount of the consideration ($8900) on or before February 15, 1924. This agreement was sufficient consideration for the agreement to convey.

It is argued that Metzger was hard pressed for money; that Gebhardt, the owner of the $5700 mortgage, was threatening to foreclose but finally agreed if Metzger would get $2700 he would let the loan stand for $3000. The $5700 note which Gebhardt held was not due for nearly five years, so that he was in no position to press Metzger for payment and there was no basis for his threat to foreclose.

Mutter testified that he and his brother were conducting a butcher shop in Ottawa and that Cole and Metzger were conducting a soft drink parlor in the building, known as the Metzger building, on the premises in question, four doors west of Mutter's shop; that he had a conversation with Metzger a month or two before February 15 concerning the sale of the Metzger building. He told Metzger he wanted to get Cole off the street, and Cole sold out to Metzger after this loan was made. He did not tell Metzger that he wished the contract of sale as additional secur-

ity for the $2700 loan and he did not approach Metzger first about the loan. Metzger testified that he had a conversation with Gebhardt, who said that he would cut down the loan to $3000 if Metzger would get $2700. He tried at several banks and could not get the money, but a day or two before the contract was executed he was in Mutter's store when Mutter said to him, "I see you need $2700; we will give it to you on a second mortgage," and he stated then that as additional security he would like to have an option on the building in case he did not pay up the loan; that he made the loan on February 16, 1922, and had the papers drawn in Smurr's office; that Metzger went there at Mutter's direction; that two days before that, Mutter said, "Joe, anything to get Cole off the street; I will loan you that money on a second mortgage." He then stated that he would want an option as security on the second mortgage. Tom W. Smurr testified that Metzger and Mutter both came to his office and requested him to draw the contract. He drew it and the mortgage and Metzger signed them both. The understanding was that the Mutter mortgage was subsequent to the $3000 mortgage. They instructed Smurr, in the event that Mutter exercised his right to purchase inside of two years, to make a memorandum to the effect that Mutter would give Metzger a lease. Smurr drew the agreement relating to the lease and delivered a copy to Metzger. His services were charged to Metzger, who paid for them. Metzger testified that he did not tell Smurr that he wanted a contract or mortgage or anything else drawn; that Mutter did the talking, and that Metzger did not ask Smurr to draw the agreement for the lease and no copy of that agreement was ever given to him and he never read it. He understood it was to be security for the loan. He signed the papers to make the loan, and he did not intend to sell that building.

The evidence to show that a written instrument in the form of a deed was in fact intended as a mortgage,—a

mere security for the payment of money,—must be clear and convincing, as in all other cases where an attempt is made to control by parol evidence the course of a legal title contrary to the meaning of a written instrument purporting to convey title. The question of fact on which the issue was made in this case depends upon the testimony of Mutter and Metzger, which is directly contradictory upon the question whether Mutter demanded additional security for the loan. Metzger states that he understood the agreement was to be security for the loan, but he and his wife both read over the agreement before he signed it, and he gave no reason for supposing that it meant anything different from what it stated, except that Mutter told him that he wanted an option as additional security for the second mortgage, and this Mutter denied. Metzger expended $200 or $300 on the building after the contract was made, but this work was voluntarily done and was only such as was necessary for the convenient occupation of the building.

The decree of the circuit court was right, and it is affirmed.

*Decree affirmed.*